UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


ERNEST REED,

                    Petitioner,

v.                                      Case No. 3:14-cv-1187-J-34JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                    Respondents.
_____

## ORDER

### I. Status

Petitioner Ernest Reed, an inmate of the Florida penal system,
initiated this action on September 29, 2014, by filing a pro se
Petition for Writ of Habeas Corpus (Petition; Doc. 1) under 28
U.S.C. § 2254 and Memorandum of Law (Memorandum; Doc. 21-1). In the
Petition, Reed challenges a 2007 state court (Duval County,
Florida) judgment of conviction for sexual battery. Respondents
have submitted a memorandum in opposition to the Petition. See
Respondents' Answer to Petition for Habeas Corpus (Response; Doc.
28) with exhibits (Resp. Ex.). On September 3, 2015, the Court
entered an Order to Show Cause and Notice to Petitioner (Doc. 15),
admonishing Reed regarding his obligations and giving Reed a time
frame in which to submit a reply. Reed submitted a brief in reply.

<u>See</u> Reply to Respondents' Answer (Reply; Doc. 31). This case is ripe for review.

## II. Procedural History

On November 9, 2006, the State of Florida charged Reed with three counts of capital sexual battery under Florida Statutes section 794.011(2)(a) and three counts of custodial sexual battery under Florida Statutes section 794.011(8)(b). <u>See</u> Resp. Ex. 1 at 22-23, Amended Information. Reed proceeded to trial in June 2007, <u>see</u> Resp. Exs. 3, 4, Transcripts of the Jury Trial (Tr.), at the conclusion of which, on June 27, 2007, a jury found him guilty of sexual battery (count four), guilty of battery, a lesser-included offense (counts five and six), <u>see</u> Tr. at 253; Resp. Ex. 1 at 101-03, Verdicts; and not guilty of sexual battery (counts one, two, and three), <u>see</u> Tr. at 252-53; Resp. Ex. 1 at 98-100, Verdicts. On August 2, 2007, the court sentenced Reed to a term of imprisonment of twenty-five years for count four, and a term of one year in the county jail with credit for 365 days as to counts five and six. Resp. Exs. 1 at 114-20, Judgment; 2 at 320-21.

On direct appeal, Reed, with the benefit of counsel, filed an initial brief, arguing that the trial court erred when it: restricted the cross-examination of the child victim (RMA) and her mother (Tisha) (ground one); permitted Tisha and RMA's friend (Phonicia) to introduce RMA's prior consistent hearsay statements to bolster her credibility (ground two); and restricted the cross-

examination of Detective Leavens relating to the failure to conduct a sexual assault examination (ground three). Resp. Ex. 6. The State filed an answer brief. <u>See</u> Resp. Ex. 7. On March 18, 2009, the appellate court affirmed Reed's conviction per curiam, <u>see</u> <u>Reed v. State</u>, 4 So.3d 1227 (Fla. 1st DCA 2009); Resp. Ex. 8, and the mandate issued on April 3, 2009, <u>see</u> Resp. Ex. 8. The court also denied his motions for rehearing on May 21, 2009, and June 22, 2009. <u>See</u> Resp. Exs. 9, 10.

On November 20, 2009, pursuant to the mailbox rule, Reed filed a pro se motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 motion). <u>See</u> Resp. Ex. 11 at 1-73. The court struck ground four of the Rule 3.850 motion as facially insufficient with leave to amend, <u>see</u> <u>id.</u> at 74-76, and Reed amended ground four on August 30, 2010, <u>see</u> <u>id.</u> at 77-81. In his request for post-conviction relief, Reed asserted that counsel was ineffective because she failed to: object when the trial court ruled that the only lesser-included offense for the three counts of custodial sexual battery was misdemeanor battery, and failed to instruct the jury that attempted custodial sexual battery was a lesser-included offense (ground one); investigate and call two exculpatory witnesses: Nell Hughes and a high school physical education teacher (ground four); object to numerous trial errors and preserve them for appellate review (ground five); renew objections to numerous trial errors and preserve them for appellate

review (ground six); impeach the State's witnesses by confronting them with inconsistent statements made in their depositions (ground seven); investigate facts about a key state witness (ground eight); and properly draft a motion in limine regarding the lingerie the victim was wearing at the time of the offense (ground nine). Reed contended that the compact diskette (CD) containing the controlled telephone conversations was false evidence in violation of <u>Giglio v. United States</u>, 405 U.S. 150 (1972), because the CD was placed in the evidence property room before the phone calls were made (ground 2(a)), and counsel was ineffective because she failed to object to the CD's authenticity (ground 2(b)) and the CD's chain of custody (ground 2(c)). He also asserted that counsel was ineffective because she improperly advised him as to his rights to testify and call witnesses (ground three), and that the cumulative effect of errors one through nine denied him a fair trial (ground ten). The court held evidentiary proceedings on Reed's Rule 3.850 on September 27, 2011, and December 14, 2011. <u>See</u> Resp. Ex. 14 at 453-506, 512-63 (EH Tr.). The court denied the motion on May 16, 2012, <u>see</u> Resp. Ex. 12 at 163-213, and later denied Reed's motions for rehearing on August 8, 2012, <u>see id.</u> at 214-51, 252-91; Resp. Ex. 13 at 292-377. On appeal, Reed filed a pro se brief, arguing that the trial court erred when it denied him post-conviction relief based on a <u>Giglio</u> violation. <u>See</u> Resp. Ex. 15. The State filed an answer brief, <u>see</u> Resp. Ex. 17; Reed filed a reply brief, <u>see</u> Resp.

Ex. 18, an amended reply brief, <u>see</u> Resp. Ex. 19, and supplemental authority, <u>see</u> Resp. Ex. 20. On June 20, 2014, the appellate court affirmed the court's denial of post-conviction relief per curiam, <u>see</u> <u>Reed v. State</u>, 145 So.3d 836 (Fla. 1st DCA 2014); Resp. Ex. 21, and later denied Reed's motion for rehearing, <u>see</u> Resp. Ex. 22. The mandate issued on August 27, 2014. <u>See</u> Resp. Ex. 21.

After Reed filed his federal Petition in this Court on September 25, 2014, pursuant to the mailbox rule, he filed a second pro se Rule 3.850 motion on December 4, 2014, <u>see</u> Resp. Ex. 23 at 1-42, followed by a motion to amend on April 6, 2015, <u>see</u> <u>id.</u> at 47-49. He filed an amended post-conviction motion on April 29, 2015. <u>See</u> <u>id.</u> at 50-86. On June 4, 2015, the court dismissed Reed's April 29th post-conviction motion with prejudice as untimely and successive, <u>see</u> <u>id.</u> at 87-126, and denied his motion for rehearing, <u>see</u> <u>id.</u> at 129-34; Resp. Ex. 24 at 18-19. On October 22, 2015, the appellate court affirmed the court's dismissal per curiam, <u>see</u> <u>Reed v. State</u>, 211 So.3d 1033 (1st DCA 2015); Resp. Ex. 28, and ultimately denied Reed's motion for rehearing, <u>see</u> Resp. Ex. 29. The mandate issued on December 21, 2015, <u>see</u> Resp. Ex. 28.

Reed filed a third pro se Rule 3.850 motion on December 16, 2015, <u>see</u> Resp. Ex. 30 at 1-59, and an addendum, <u>see</u> Resp. Ex. 31 at 1-43. The court dismissed the motion with prejudice on June 17, 2016, <u>see</u> Resp. Ex. 30 at 63-80, and later denied his motion for rehearing, <u>see</u> <u>id.</u> at 83-90, 91-134. On January 31, 2017, the

appellate court affirmed the court's dismissal per curiam, <u>see</u> http://jweb.flcourts.org, <u>Ernest Reed v. State of Florida</u>, 1D16-3489, and the mandate issued on February 28, 2017, <u>see</u> <u>id.</u>

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d); Response at 8-12.

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez</u> <u>v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y,</u> <u>Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318-19 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Reed's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc), cert. granted, 137 S. Ct. 1203 (2017); Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011) (citation omitted); see also Johnson v. Williams, 568 U.S. 289, --, 133 S. Ct. 1088,

1096 (2013).[1] Thus, the state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Richter, 562 U.S. at 100.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. As the Eleventh Circuit has explained:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application"

---

[1] The presumption is rebuttable and "may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Richter, 562 U.S. at 99-100; see also Johnson, 133 S. Ct. at 1096-97. However, "the Richter presumption is a strong one that may be rebutted only in unusual circumstances . . . ." Johnson, 133 S. Ct. at 1096.

clause allows for relief only "if the state
court identifies the correct governing legal
principle from [the Supreme] Court's decisions
but unreasonably applies that principle to the
facts of the prisoner's case." <u>Id.</u>

Second, § 2254(d)(2) provides for federal
review for claims of state courts' erroneous
factual determinations. Section 2254(d)(2)
allows federal courts to grant relief only if
the state court's denial of the petitioner's
claim "was based on an unreasonable
determination of the facts in light of the
evidence presented in the State court
proceeding." 28 U.S.C. § 2254(d)(2). The
Supreme Court has not yet defined §
2254(d)(2)'s "precise relationship" to §
2254(e)(1), which imposes a burden on the
petitioner to rebut the state court's factual
findings "by clear and convincing evidence."
<u>See</u> <u>Burt v. Titlow</u>, 571 U.S. ---, ---, 134 S.
Ct. 10, 15, 187 L.Ed.2d 348 (2013); <u>accord</u>
<u>Brumfield v. Cain</u>, 576 U.S. ---, ---, 135 S.
Ct. 2269, 2282, 192 L.Ed.2d 356 (2015).
Whatever that "precise relationship" may be,
"'a state-court factual determination is not
unreasonable merely because the federal habeas
court would have reached a different
conclusion in the first instance.'"[2] <u>Titlow</u>,
571 U.S. at ---, 134 S. Ct. at 15 (quoting
<u>Wood v. Allen</u>, 558 U.S. 290, 301, 130 S. Ct.
841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016), <u>cert</u>.

<u>denied</u>, 137 S. Ct. 2298 (2017); <u>see</u> <u>also</u> <u>Daniel v. Comm'r, Ala.</u>

<u>Dep't of Corr.</u>, 822 F.3d 1248, 1259 (11th Cir. 2016). Also,

deferential review under § 2254(d) generally is limited to the

record that was before the state court that adjudicated the claim

---

[2] The Eleventh Circuit has described the interaction between
§ 2254(d)(2) and § 2254(e)(1) as "somewhat murky." <u>Clark v. Att'y</u>
<u>Gen., Fla.</u>, 821 F.3d 1270, 1286 n.3 (11th Cir. 2016).

on the merits. <u>See</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 182 (2011)

(stating the language in § 2254(d)(1)'s "requires an examination of

the state-court decision at the time it was made"); <u>Landers v.</u>

<u>Warden, Att'y Gen. of Ala.</u>, 776 F.3d 1288, 1295 (11th Cir. 2015)

(regarding § 2254(d)(2)).

Where the state court's adjudication on the merits is

"'unaccompanied by an explanation,' a petitioner's burden under

section 2254(d) is to 'show[] there was no reasonable basis for the

state court to deny relief.'" <u>Wilson</u>, 834 F.3d at 1235 (quoting

<u>Richter</u>, 562 U.S. at 98). Thus, "a habeas court must determine what

arguments or theories supported or, as here, could have supported,

the state court's decision; and then it must ask whether it is

possible fairminded jurists could disagree that those arguments or

theories are inconsistent with the holding in a prior decision of

[the] Court." <u>Richter</u>, 562 U.S. at 102; <u>see also</u> <u>Wilson</u>, 834 F.3d

at 1235. To determine which theories could have supported the state

appellate court's decision, the federal habeas court may look to a

state trial court's previous opinion as one example of a reasonable

application of law or determination of fact. <u>Wilson</u>, 834 F.3d at

1239; <u>see also</u> <u>Butts v. GDCP Warden</u>, 850 F.3d 1201, 1204 (11th Cir.

2017).[3] However, in <u>Wilson</u>, the en banc Eleventh Circuit stated

---

[3] Although the United States Supreme Court has granted
Wilson's petition for certiorari, the "en banc decision in <u>Wilson</u>
remains the law of the [Eleventh Circuit] unless and until the
Supreme Court overrules it." <u>Butts</u>, 850 F.3d at 1205 n.2.

that the federal habeas court is not limited to assessing the reasoning of the lower court. 834 F.3d at 1239. As such,

> even when the opinion of a lower state court contains flawed reasoning, [AEDPA] requires that [the federal court] give the last state court to adjudicate the prisoner's claim on the merits "the benefit of the doubt," Renico,[4] 559 U.S. at 773, 130 S.Ct. 1855 (quoting Visciotti,[5] 537 U.S. at 24, 123 S.Ct. 357), and presume that it "follow[ed] the law," Donald,[6] 135 S.Ct. at 1376 (quoting Visciotti, 537 U.S. at 24, 123 S.Ct. 357).

Id. at 1238.

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). "This standard is 'meant to be' a difficult one to meet." Rimmer v. Sec'y, Fla. Dep't of Corr., No. 15-14257, 2017 WL 3140882, *11 (July 25, 2017) (quoting Richter, 562 U.S. at 102). Thus, to the extent that Reed's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

---

[4] Renico v. Lett, 559 U.S. 766 (2010).

[5] Woodford v. Visciotti, 537 U.S. 19 (2002).

[6] Woods v. Donald, 135 U.S. 1372 (2015).

## VI. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S.Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S.

838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[7] supra, at 747–748, 111 S.Ct. 2546; Sykes,[8] supra, at 84–85, 97 S.Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S.Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S.Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the

---

[7] Coleman v. Thompson, 501 U.S. 722 (1991).

[8] Wainwright v. Sykes, 433 U.S. 72 (1977).

> default and prejudice from a violation of
> federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750,
> 111 S.Ct. 2546.

<u>Martinez v. Ryan</u>, 132 S. Ct. 1309, 1316 (2012). Thus, procedural

defaults may be excused under certain circumstances.

Notwithstanding that a claim has been procedurally defaulted, a

federal court may still consider the claim if a state habeas

petitioner can show either (1) cause for and actual prejudice from

the default; or (2) a fundamental miscarriage of justice. <u>Ward v.</u>

<u>Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010); <u>In Re Davis</u>, 565 F.3d

810, 821 (11th Cir. 2009). In order for a petitioner to establish

cause,

> the procedural default "must result from some
> objective factor external to the defense that
> prevented [him] from raising the claim and
> which cannot be fairly attributable to his own
> conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252,
> 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477
> U.S. at 488, 106 S.Ct. 2639).[9] Under the
> prejudice prong, [a petitioner] must show that
> "the errors at trial actually and
> substantially disadvantaged his defense so
> that he was denied fundamental fairness." <u>Id</u>.
> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106
> S.Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In <u>Martinez</u>, the Supreme Court modified the general rule in

<u>Coleman</u>[10] to expand the "cause" that may excuse a procedural

---

[9] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

[10] "Negligence on the part of a prisoner's postconviction
attorney does not qualify as 'cause.'" <u>Maples v. Thomas</u>, 565 U.S.
266, 280 (2012) (citing <u>Coleman</u>, 501 U.S. at 753). The Court

default. 132 S.Ct. at 1315.

Allowing a federal habeas court to hear a
claim of ineffective assistance of trial
counsel when an attorney's errors (or the
absence of an attorney) caused a procedural
default in an initial-review collateral
proceeding acknowledges, as an equitable
matter, that the initial-review collateral
proceeding, if undertaken without counsel or
with ineffective counsel, may not have been
sufficient to ensure that proper consideration
was given to a substantial claim. From this it
follows that, when a State requires a prisoner
to raise an ineffective-assistance-of-trial-
counsel claim in a collateral proceeding, a
prisoner may establish cause for a default of
an ineffective-assistance claim in two
circumstances. The first is where the state
courts did not appoint counsel in the initial-
review collateral proceeding for a claim of
ineffective assistance at trial. The second is
where appointed counsel in the initial-review
collateral proceeding, where the claim should
have been raised, was ineffective under the
standards of <u>Strickland v. Washington</u>, 466
U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984). To overcome the default, a prisoner
must also demonstrate that the underlying
ineffective-assistance-of-trial-counsel claim
is a substantial one, which is to say that the
prisoner must demonstrate that the claim has
some merit. <u>Cf</u>. <u>Miller-El v. Cockrell</u>, 537
U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931
(2003) (describing standards for certificates
of appealability to issue).

---

reasoned that, under principles of agency law, the attorney is the
prisoner's agent, and therefore, the principal bears the risk of
negligent conduct on the part of his agent. <u>Coleman</u>, 501 U.S. at
753-54. In <u>Coleman</u>, the alleged ineffectiveness of counsel was on
appeal from an initial-review collateral proceeding, and in that
proceeding the prisoner's claims had been addressed by the state
habeas trial court. <u>Id</u>. at 755. However, the <u>Martinez</u> Court
addressed inadequate assistance of counsel at an initial-review
collateral proceeding.

Id. at 1318-19.

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if he can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S.Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such

evidence, in most cases, allegations of actual innocence are
ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## VII. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants the
effective assistance of counsel. That right is denied when a
defense attorney's performance falls below an objective standard of
reasonableness and thereby prejudices the defense." <u>Yarborough v.
Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>,
539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S.
668, 687 (1984)).

> To establish deficient performance, a
> person challenging a conviction must show that
> "counsel's representation fell below an
> objective standard of reasonableness."
> [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052.
> A court considering a claim of ineffective
> assistance must apply a "strong presumption"
> that counsel's representation was within the
> "wide range" of reasonable professional
> assistance. <u>Id.</u>, at 689, 104 S.Ct. 2052. The
> challenger's burden is to show "that counsel
> made errors so serious that counsel was not
> functioning as the 'counsel' guaranteed the
> defendant by the Sixth Amendment." <u>Id.</u>, at
> 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger
> must demonstrate "a reasonable probability
> that, but for counsel's unprofessional errors,
> the result of the proceeding would have been
> different. A reasonable probability is a
> probability sufficient to undermine confidence
> in the outcome." <u>Id.</u>, at 694, 104 S.Ct. 2052.
> It is not enough "to show that the errors had
> some conceivable effect on the outcome of the
> proceeding." <u>Id.</u>, at 693, 104 S.Ct. 2052.
> Counsel's errors must be "so serious as to
> deprive the defendant of a fair trial, a trial

whose result is reliable." Id., at 687, 104
S.Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the
absence of any iron-clad rule requiring a court to tackle one prong
of the Strickland test before the other." Ward, 592 F.3d at 1163.
Since both prongs of the two-part Strickland test must be satisfied
to show a Sixth Amendment violation, "a court need not address the
performance prong if the petitioner cannot meet the prejudice
prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d
1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is
easier to dispose of an ineffectiveness claim on the ground of lack
of sufficient prejudice, which we expect will often be so, that
course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is
accorded great deference.

> "[T]he standard for judging counsel's
> representation is a most deferential one."
> Richter, - U.S. at -, 131 S.Ct. at 788. But
> "[e]stablishing that a state court's
> application of Strickland was unreasonable
> under § 2254(d) is all the more difficult. The
> standards created by Strickland and § 2254(d)
> are both highly deferential, and when the two
> apply in tandem, review is doubly so." Id.
> (citations and quotation marks omitted). "The
> question is not whether a federal court
> believes the state court's determination under
> the Strickland standard was incorrect but
> whether that determination was unreasonable -
> a substantially higher threshold." Knowles v.
> Mirzayance, 556 U.S. 111, 123, 129 S.Ct. 1411,
> 1420, 173 L.Ed.2d 251 (2009) (quotation marks
> omitted). If there is "any reasonable argument
> that counsel satisfied Strickland's

> deferential standard," then a federal court
> may not disturb a state-court decision denying
> the claim. <u>Richter</u>, - U.S. at -, 131 S.Ct. at
> 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014), <u>cert</u>.

<u>denied</u>, 135 S.Ct. 2126 (2015); <u>Knowles v. Mirzayance</u>, 556 U.S. 111,

123 (2009). "In addition to the deference to counsel's performance

mandated by <u>Strickland</u>, the AEDPA adds another layer of

deference--this one to a state court's decision--when we are

considering whether to grant federal habeas relief from a state

court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th

Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never

an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VIII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Reed asserts that the trial court erred when it

limited his cross-examination of RMA and Tisha in violation of the

Sixth and Fourteenth Amendments. <u>See</u> Petition at 6-7; Reply at 1-7.

Reed argued this issue on direct appeal, <u>see</u> Resp. Ex. 6 at 16-20;

the State filed an answer brief, <u>see</u> Resp. Ex. 7 at 6-24; and the

appellate court affirmed Reed's conviction per curiam without a

written opinion as to this issue, <u>see</u> <u>Reed</u>, 4 So.3d 1227. To the

extent Reed is raising, in ground one, the same claim he presented

on direct appeal, the claim is sufficiently exhausted.

In its appellate brief, the State addressed the claim on the

merits, <u>see</u> Resp. Ex. 7 at 8-24, and therefore, the appellate court

may have affirmed Reed's conviction based on the State's argument. If the appellate court addressed the merits, the state court's adjudication of this claim is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Reed is not entitled to relief on the basis of this claim.

Even assuming that the state court's adjudication of this claim is not entitled to deference, and that the claim presents a sufficiently exhausted issue,[11] Reed's claim is without merit. Reed asserts that the trial court erred when it sustained the State's objections during his cross-examination of RMA and Tisha. Defense counsel sought to challenge their credibility in support of Reed's defense theory that RMA and Tisha "manufactured this story to get him out of the picture." Petition at 7. The excluded evidence proffered outside the presence of the jury was as follows: Tisha's new boyfriend moved in with Tisha after Reed's arrest, see Tr. at 62-66; after Reed's arrest, Tisha permitted RMA to move into the apartment where Reed and Tisha had lived, see id. at 66-69, and

---

[11] See Response at 23-27.

Tisha sent love letters and money to Reed to manipulate him into agreeing to sign paperwork to finalize their divorce, see id. at 131–135.[12]

The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant "an opportunity to cross-examine the witnesses against him." Pointer v. Texas, 380 U.S. 400, 407 (1965). However, "the Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" Kentucky v. Stincer, 482 U.S. 730, 739 (1987) (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985)). The Confrontation Clause does not curtail the trial judge's discretion to impose limits on defense counsel's inquiry into the potential bias of a prosecution witness. Trial judges "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).

In the instant case, the trial judge permitted defense counsel to adequately engage in cross-examination of RMA and Tisha in order for the jury to determine their credibility. On this record, the

---

[12] See Resp. Ex. 6 at 18.

trial court did not err when he limited the cross-examination of RMA and Tisha as to the proffered evidence. See id. at 59-69, 130-35. Accordingly, Reed is not entitled to federal habeas relief on ground one.

## B. Ground Two

As ground two, Reed asserts that the trial court erred when it permitted Tisha and Phonicia to testify, over defense counsel's objection, about RMA's prior consistent assertions of sexual abuse to bolster RMA's credibility. See Petition at 8-9. Petitioner concedes this issue. See Reply at 7. Therefore, the Court will not address ground two.

## C. Ground Three

As ground three, Reed asserts that the trial court erred when it limited the cross-examination of Detective Leavens relating to the failure to conduct a sexual assault examination. See Petition at 10; Reply at 7-13. Reed argued this issue on direct appeal, see Resp. Ex. 6 at 26-28; the State filed an answer brief, see Resp. Ex. 7 at 40-47; and the appellate court affirmed Reed's conviction per curiam without a written opinion as to this issue, see Reed, 4 So.3d 1227. To the extent Reed is raising, in ground three, the same claim he presented on direct appeal, the claim is sufficiently exhausted.

In its appellate brief, the State addressed the claim on the merits, see Resp. Ex. 7 at 45-47, and therefore, the appellate

court may have affirmed Reed's conviction based on the State's argument. If the appellate court addressed the merits, the state court's adjudication of this claim is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Reed is not entitled to relief on the basis of this claim.

Even assuming that the state court's adjudication of this claim is not entitled to deference, and that the claim presents a sufficiently exhausted issue,[13] Reed's claim is without merit. Detective Leavens testified in pertinent part on direct examination:

> Q Now you mentioned the sexual assault response center [(SARC)], why are victims taken there?
>
> A Normally they are taken there within 72 hours of sexual assault and that's to collect any DNA evidence that might be present, any hair follicles that might be present and to collect and make sure they don't have any communicable disease that might have been transferred by the perpetrator.

---

[13] See Response at 41-44.

Q In this case did you ask [the victim] to go to SARC?

A No, ma'am.

Q Why not?

A Because of the time of the incident and the time of the report was a several year gap, there would be no reason to go to SARC because there would be no evidence.

Tr. at 97. On cross-examination, defense counsel inquired as to why Detective Leavens failed to ask the victim to go to SARC for a medical examination.

Q You were questioned just briefly about SARC, the Sexual Assault Response Center and you had not asked [the victim] to go there because the occurrence had been some time ago, that's correct?

A That's correct.

Q And they would not necessarily yield anything of evidentiary value, correct?

A That's correct.

Q But in fact, it could have potentially yielded evidence, correct?

A Not very likely, after 72 hours[,] it's standard practice of the Sexual Assault Response Center not to give medical exams to victims.

Q But we don't know, we don't know what would have come from that, correct?

A There was a two year lapse between her, the last incident and when she reported it. It's highly unlikely that there would have been any evidence of value.

Q But the sexual assault exam could have told us if there were any anatomical changes to [the victim] that would indicate whether or not she –

[PROSECUTOR]: Objection, he's not a doctor to know that information.

[DEFENSE COUNSEL]: Well --

[PROSECUTOR]: Calls for speculation on his part.

THE COURT: Sustained.

BY [DEFENSE COUNSEL]:

Q Detective, you are assigned specifically to the sex crimes unit, correct?

A That's correct.

Q And what are, I'm sorry, you did testify as to the purpose of a SARC exam, correct?

A Correct.

Q And what did you indicate were the purposes of sending someone to a SARC exam?

A To obtain anything of evidentiary value, to make sure that the victim wasn't given any type of sexually transmitted disease, collect any hair follicles that may be present not belonging to the victim.

Q Is it also to look for anything that would be of evidentiary value to corroborate any of the things that they had told you about what occurred, any physical diagnostics, is that part [of] what is done during a SARC exam?

A I don't quite understand what you're asking me.

Q It's a physical exam of her person, correct?

A Yes, ma'am, there's a physical exam.

> Q Okay. But that was not done on Miss Jackson,
> correct? I'm sorry, [the victim], correct?
>
> A No, ma'am.

Id. at 105-07.

The trial court permitted defense counsel to adequately engage in cross-examination of Detective Leavens as to why he did not refer RMA to SARC for an examination. On this record, the trial court did not err when he sustained the State's objection to defense counsel's inquiry relating to whether a sexual assault examination of the victim would have shown any "anatomical changes."[14] Accordingly, Reed is not entitled to federal habeas relief on ground three.

## D. Grounds Four, Five and Six

As ground four, Reed asserts that counsel was ineffective because she failed to file a motion to suppress "known false evidence" (the CD recording of the controlled telephone call between Reed and Tisha). Petition at 12-13; Reply at 13-16. He states that Detective Leavens edited the recording and omitted portions that would have been helpful to the defense.[15] See Petition at 12. He also asserts that counsel was ineffective because she

---

[14] See Tr. at 208 (defense counsel's closing argument); see Resp. Ex. 6 at 27 (stating Reed, on cross-examination, "attempted to elicit testimony that a sexual assault examination might reveal whether [RMA] was still a virgin").

[15] Reed asserts that Detective Leavens spliced four separate telephone conversations that totaled 94 seconds into a single 79-second conversation. See Petition at 12.

failed to: "alert" the trial court that the property storage card for the CD recording showed an incorrect time as to when Detective Leavens submitted the recording into the evidence room (ground five), Petition at 15-16; Reply at 17-19, and challenge the authenticity of the recording prior to its admission (ground six), see Petition at 17-18; Reply at 19.

Petitioner presented issues relating to the recording in his Rule 3.850 motion, see Resp. Ex. 11 at 8-16, and at the evidentiary hearing. The post-conviction court ultimately denied the motion as to the claims. In doing so, the court stated in pertinent part:

> The Defendant's next claim involves three subclaims. First, the Defendant claims the compact disk ("CD") containing the controlled telephone conversations between himself and the victim's mother was false evidence in violation of Giglio v. U.S., 92 S.Ct. 763 (1972), because the CD was placed in the evidence property room before the phone calls were made. Second, he alleges counsel was ineffective for failing to raise objections regarding the authenticity of the CD. Third, the Defendant alleges counsel was ineffective for failing to object to the chain of custody of the CD.
>
> As for the Defendant's first subclaim, a Giglio violation is demonstrated when (1) the prosecutor presented or failed to correct false testimony; (2) the prosecutor knew the testimony was false; and (3) the false evidence was material. Guzman v. State, 941 So.2d 1045, 1050 (Fla. 2006). However, in the instant case, the Defendant has failed to allege that the prosecutor "knew" that the CD was a false representation of the controlled telephone conversation. Moreover, after thoroughly reviewing the trial record and sitting throughout the pendency of the

evidentiary hearings on the instant Motion,
this Court finds that neither the property
storage card nor Officer Leavens' testimony
was fabricated. Notably, the Defendant
testified that it was his voice on the CD and
that he recalls the phone call. Therefore,
there is no evidence that Officer Leavens
fabricated the property storage card.
Accordingly, the Defendant's <u>Giglio</u> subclaim
is without merit and, therefore, denied.

The Defendant's second and third
subclaims are likewise denied. At trial,
defense counsel objected to the introduction
of the CD evidence.[16] That objection was
overruled because a sufficient predicate was
laid to establish the authenticity through the
testimony of one of the parties to the
telephone conversation, and, as to the method
in which the recording was made and preserved,
through the testimony of the detective
responsible for making the recording. The
Defendant's motion suggests the possibility
that the audiotape could have been edited or
altered, but the Defendant presented no
evidence at the evidentiary hearing to support
that claim. Counsel's efforts to prevent the
introduction of these recordings, which
contained critical recorded admissions by the
Defendant[,] were within the range of
reasonable professional assistance even though
they were not successful.

Resp. Ex. 12 at 166-67. The court later denied Reed's motions for

rehearing. <u>See</u> Resp. Ex. 13 at 292-94. On Reed's appeal, the

---

[16] Notably, the state circuit court's determination of fact
that counsel objected to the introduction of the CD evidence is
incorrect. <u>See</u> Response at 75-78. Counsel's only objection relating
to the controlled call was to Detective Leavens' testimony that
when he called the number that was the subject of the controlled
call, he believed that the person who answered was Reed. <u>See</u> Tr. at
96-97. When the State moved to admit the CD recording into evidence
during Tisha's testimony, defense counsel stated, "No objection."
<u>Id.</u> at 119.

appellate court affirmed the court's denial per curiam, <u>see</u> <u>Reed</u>,
145 So.3d 836, and denied Reed's motion for rehearing, <u>see</u> Resp.
Ex. 22. To the extent Reed is raising, in grounds four, five and
six, the same claims he presented in his Rule 3.850 motion, the
claims are sufficiently exhausted.

To the extent that the state appellate court affirmed the
trial court's denial on the merits, the Court will address these
claims in accordance with the deferential standard for federal
court review of state court adjudications. After a review of the
record and the applicable law, the Court concludes that the state
court's adjudication of these claims was not contrary to clearly
established federal law, did not involve an unreasonable
application of clearly established federal law, and was not based
on an unreasonable determination of the facts in light of the
evidence presented in the state court proceedings. Thus, Reed is
not entitled to relief on the basis of these ineffectiveness
claims.

Moreover, even assuming the claims are sufficiently exhausted
and the state appellate court's adjudication of the claims is not
entitled to deference, Reed's ineffectiveness claims are still
without merit. In evaluating the performance prong of the
<u>Strickland</u> ineffectiveness inquiry, there is a strong presumption
in favor of competence. See <u>Anderson v. Sec'y, Fla. Dep't of Corr.</u>,
752 F.3d 881, 904 (11th Cir. 2014). The presumption that counsel's

performance was reasonable is even stronger when, as in this case, defense counsel Ms. Eckels is an experienced criminal defense attorney.[17] The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005). Thus, Reed must establish that no competent attorney would have taken the action that counsel, here, chose.

Notably, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Ward, 592 F.3d at 1164 (quotations and

---

[17] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000); see Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999). Ms. Eckels was admitted to the Florida Bar in 1994. See http://www.floridabar.org. At the time of Reed's trial in 2007, Eckels was an experienced trial lawyer. At the time of the 2011 evidentiary hearing, she had been practicing criminal defense law for over sixteen years. See EH Tr. at 466.

citation omitted); <u>Dingle v. Sec'y for Dep't of Corr.</u>, 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

On this record, Reed has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance.[18]    Even assuming arguendo deficient performance by defense counsel, Reed has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had filed a motion to suppress or made arguments as to the admissibility of the controlled telephone call in the manner he suggests. Notably, Reed testified that he recalled the telephone call with Tisha and that it was his voice on the recording. <u>See</u> Tr. at 153-54, 157. His ineffectiveness claims are without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Reed is not entitled to federal habeas relief on grounds four, five and six.

---

[18] The CD recording that was played for the jury was not 79 seconds in duration, as Reed asserts. The recording is 113 seconds in duration from when Reed answered his phone until he ended the call. <u>See</u> Resp. Ex. 35 (State's Exhibit 3, CD recording); <u>see</u> <u>also</u> Tr. at 119, 120-22 (playing the CD for the jury); Resp. Ex. 11 at 66 (showing the date and time of the call as 5/31/2006 at 06:31:19 a.m. Pacific Standard Time), 68 (reflecting the date and time of the property storage card as 5/31/2006 at 12:57:00 p.m.).

## E. Ground Seven

As ground seven, Reed asserts that the post-conviction court erred when it failed to grant him a new trial. <u>See</u> Petition at 19-20; Reply at 20. He states that the post-conviction evidentiary hearing was unfair because the State committed prosecutorial misconduct when the prosecutor told the court that the CD recording was one telephone call, not three different calls spliced together. <u>See</u> Petition at 20. Reed contested the prosecutor's alleged misrepresentation at the December 14, 2011 evidentiary hearing. <u>See</u> EH Tr. at 527-29. He argued the issue in his initial appellate brief, <u>see</u> Resp. Ex. 15; the State filed an answer brief, <u>see</u> Resp. Ex. 17; Reed filed an amended reply brief, <u>see</u> Resp. Ex. 19; and the appellate court affirmed the court's denial of post-conviction relief per curiam, <u>see</u> Resp. Ex. 21, and denied Reed's motion for rehearing, <u>see</u> Resp. Ex. 22.

To the extent that the state appellate court affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in

the state court proceedings. Thus, Reed is not entitled to relief on the basis of the claim.

Moreover, even assuming the state appellate court's adjudication of the claim is not entitled to deference, Reed's claim is still without merit. The prosecutor's representation (that it "was one telephone call that was testified to at trial")[19] to the court at the evidentiary hearing, see EH Tr. at 527, was accurate, see Resp. Exs. 11 at 66; 35. Therefore, Reed is not entitled to federal habeas relief on ground seven.

## F. Ground Eight

As ground eight, Reed asserts that the state appellate court erred when it failed to remand his Giglio claim to the trial court with an instruction to strike the claim with leave to amend. See Petition at 21-22. Petitioner concedes this issue. See Reply at 20. Accordingly, the Court will not address ground eight.

## G. Ground Nine

As ground nine, Reed asserts that the post-conviction court erred when it would not allow him to present billing records as evidence at the evidentiary hearing to prove that the controlled call was a false representation. See Petition at 23-24; Reply at 20-21. To the extent that Reed raises challenges relating to the state collateral proceeding, such challenges do not state a basis

---

[19] The prosecutor did not testify at the December 14, 2011 evidentiary hearing, but instead made unsworn arguments to the court as counsel for the State of Florida.

for federal habeas relief. The Eleventh Circuit Court of Appeals "has repeatedly held defects in state collateral proceedings do not provide a basis for habeas relief." Carroll v. Sec'y, Dep't of Corr., 574 F.3d 1354, 1365 (11th Cir. 2009) (citations omitted). "The reasoning behind this well-established principle is straightforward: a challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment--i.e., the conviction itself--and thus habeas relief is not an appropriate remedy." Id. (citations omitted). Therefore, Reed is not entitled to federal habeas relief on ground nine.

## H. Ground Ten

As ground ten, Reed asserts that counsel was ineffective because she failed to cross-examine Detective Leavens about the authenticity of the controlled telephone call. See Petition at 27-28; Reply at 21. Respondents contend, see Response at 92-97, and Petitioner agrees, see Petition at 27, that the claim is procedurally barred. On this record, the Court agrees that the claim has not been exhausted, and is therefore procedurally barred since Reed failed to raise the claim in a procedurally correct manner. Reed has not shown either cause excusing the default or actual prejudice resulting from the bar.[20] Moreover, he has failed

---

[20] "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Martinez, 132 S.Ct. at 1318 (citation omitted). As discussed in the alternative merits

to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Assuming Reed's claim is not procedurally barred, Reed is not entitled to federal habeas relief. Reed has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Reed has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had questioned the authenticity of the recording or cross-examined Detective Leavens in the manner suggested by Reed. As previously stated, Reed testified that he recalled the telephone call with Tisha and that it was his voice on the recording. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Reed is not entitled to federal habeas relief on ground ten.

## I. Ground Eleven

As ground eleven, Reed asserts that counsel was ineffective because she failed to file a motion to suppress the CD recording of the controlled telephone call between Reed and Tisha. <u>See</u> Petition at 29-30; Reply at 21-22. Respondents contend, and this Court

---

analysis that follows, this ineffectiveness claim lacks any merit. Therefore, Reed has not shown that he can satisfy an exception to the bar.

agrees, that this appears to be the same ineffectiveness claim presented in ground four of the instant Petition. Therefore, for the reasons set forth in section VIII.D., Reed is not entitled to federal habeas relief on ground eleven.

## J. Ground Twelve

As ground twelve, Reed asserts that a manifest injustice occurred when the prosecutor used false evidence (the CD recording and the property storage card) to convict him and that he is actually innocent of the offenses. See Memorandum; Reply at 22-35. Petitioner argued manifest injustice in his April 29, 2015 amended post-conviction motion. See Ex. 23 at 50-86. The circuit court dismissed Reed's motion with prejudice as untimely and successive, see id. at 87-126, and denied his motion for rehearing, see id. at 129-34; Resp. Ex. 24 at 18-19. The appellate court affirmed the court's dismissal per curiam, see Reed, 211 So.3d 1033; Resp. Ex. 28, and denied Reed's motion for rehearing, see Resp. Ex. 29.

Even assuming the claim is sufficiently exhausted and timely filed,[21] Reed is not entitled to federal habeas relief. Actual innocence is not itself a constitutional claim justifying federal habeas relief, but instead is a gateway through which a habeas petitioner must pass to have his otherwise procedurally barred

---

[21] Respondents claim, see Response at 12, 107 n.34, and this Court agrees, that ground twelve does not relate back to any of the claims in the original Petition, and therefore is due to be dismissed as untimely. Nevertheless, for purposes of the foregoing analysis, this Court will assume Reed timely filed the claim.

constitutional claim considered on the merits. <u>Herrera v. Collins</u>, 506 U.S. 390, 404 (1993). Insofar as Reed intends for his actual innocence to serve as a gateway for consideration of constitutional claims procedurally defaulted in state court, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. Therefore, Reed is not entitled to federal habeas relief on ground twelve.

## IX. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Reed seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Reed "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u>

<u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Reed appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 25th day of August, 2017.


MARCIA MORALES HOWARD
United States District Judge


sc 8/25
c:
Ernest Reed
Counsel of Record